K# 144444

# CIVIL CASE COVER SHEET

Check one: ☐ CHANCERY COURT ☒ CIRCUIT COURT Docket N0. 07C1013

Date 8-29-07 Attorney of Record Gary R. Patrick

**I. Origin** ☒ Original Proceeding ☐ Case Reopened ☐ Counter-claim ☐ Cross-claim ☐ 3rd Party Claim ☐ Intervening Claim
☐ Answer/Initial Responsive Pleading ☐ Other (Specify)

**II. Type of Action (Check one)**

**Domestic Relations**

☐ 361 Paternity ☐ 362 Legitimation ☐ 363 Adoption ☐ 364 Surrender
☐ 371 Divorce with minor children ☐ 372 Divorce without minor children ☐ 381 Order of Protection ☐ 391 Interstate Support-Incoming
☐ 392 Interstate Support-Outgoing
☐ 401 Other Domestic Relations (Specify)

**General Civil**

☒ 461 Contract/Debt ☐ 462 Specific Performance ☐ 471 Damages/Torts ☐ 481 Real Estate Matter
☐ 491 Workers Compensation ☐ 501 Probate ☐ 511 Juvenile Court Appeal ☐ 512 General Sessions Appeal
☐ 513 Appeal from Admin. Hearing ☐ 571 Conservatorship ☐ 572 Guardianship ☐ 573 Trust
☐ 581 Miscellaneous General Civil (Specify)

**Other** ☐ 541 Judicial Hospitalization

**Petition for: (Reopened Cases)** ☐ 381 Order of Protection ☐ 382 Contempt ☐ 383 Residential Parenting/No Child Support
☐ 384 Residential Parenting/Child Support ☐ 385 Child Support ☐ 387 Wage Assignment Hearing
☐ 551 Other

**III.** Total amount sued for $ Specific type of damages or relief sought

Statutory authority for suit, if any

**IV.** Check one: ☐ Affidavit to proceed *in forma pauperis* ☒ Cost Bond Surety Patrick, Beard, Schulman & Jacoway, PC

**V.** JURY DEMAND (Check YES only if demanded in complaint) ☒ YES ☐ NO

**VI.** RELATED CASES (if any) Docket N0. Judge

Date filed Status

**VII. PLAINTIFF/PETITIONER INFORMATION** (List additional parties on supplemental form.)

1. Name Safety and Ecology Corporation
Last First Middle

☐ AKA ☐ DBA ☐ BNF

S.S.# DOB Driver's License #

COMPANY NAME

2700 Solway Road
ADDRESS

Knoxville Tn 37931
CITY STATE ZIP

EMPLOYER

ADDRESS

CITY STATE ZIP

Gary R. Patrick 1941
ATTORNEY BPR #

537 Market Street, Suite 202
ADDRESS

Chattanooga Tn 37402
CITY STATE ZIP

423-756-7117
PHONE

**VIII. DEFENDANT/RESPONDENT INFORMATION** (List additional parties on supplemental form.)

1. Name Chubb & Son, Inc.
Last First Middle

☐ AKA ☐ DBA ☐ BNF

S.S.# DOB Driver's License #

c/o Registered Agent CT Corporation System
COMPANY NAME

800 S. Gay Street, Suite 2021
ADDRESS

Knoxville Tn 37929
CITY STATE ZIP

EMPLOYER

ADDRESS

CITY STATE ZIP

ATTORNEY BPR #

ADDRESS

CITY STATE ZIP

PHONE

TYPE OF SERVICE REQUIRED

☒ Out of County Sheriff Knox County ☐ Publication (specify)
☐ Local Sheriff ☐ Other (specify)
☐ Secretary of State Special Instructions
☐ Comm. Of Ins.

**IX. ASSOCIATED PARTY (Uninsured Motorist Carrier) INFORMATION**

1. Name Address

Type of Service (specify)

Are additional plaintiffs or defendants listed on a separate sheet? ☐ YES ☒ NO

[Form 022, Rev. 2001.06.18]

EXHIBIT 1

IN THE CIRCUIT COURT OF HAMILTON COUNTY, TENNESSEE

FILED IN OFFICE
2007 AUG 29
PAULA T. THOMPSON, CLERK
BY

| | | |
|---|---|---|
| **SAFETY AND ECOLOGY CORPORATION,** | ) | |
| **Plaintiff,** | ) | **Docket No.** 07C1043 |
| v. | ) | **Division** ___ |
| **CHUBB & SON INC.,** | ) | **JURY DEMAND** |
| **Defendant.** | ) | |

## COMPLAINT

Comes now the Plaintiff, Safety and Ecology Holding, Inc. (the "Plaintiff"), and files this Complaint against the Defendant, Chubb & Son Inc. (the "Defendant") and for its cause of action states as follows:

1. The Plaintiff is a Nevada corporation that is authorized to do business in the State of Tennessee with its principal place of business located at 2800 Solway Road, Knoxville, Tennessee 37931.

2. The Defendant is a New York corporation that is authorized to do and is doing business in the State of Tennessee and is subject to the jurisdiction of this Court. The Defendant may be served by delivering a copy of a Summons and Complaint to its registered agent, CT Corporation System at 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929. Venue is proper in this Court.

## FACTS

3. The Defendant issued a corporate liability policy, No. 8166-0873 (the "Policy"), to the Plaintiff effective June 10, 2000. The Policy was written by Executive Risk Specialty Insurance Company and is attached hereto as **Exhibit A**.

4. Phillip Borris, Rodney Gossett and others filed a complaint against the Plaintiff and Bechtel Jacobs Company in the United States District Court for the Southern District of Ohio, (the "Borris matter"), attached hereto as **Exhibit B**.

5. The Defendant initially assumed the Plaintiff's defense in the Borris matter, pursuant to the terms of the Policy, until the matter was sealed by the District Court.

6. In October of 2006, the Borris matter was unsealed and the Plaintiff again tendered the defense to the Defendant for coverage of the Plaintiff, pursuant to the terms of the Policy.

7. The Defendant denied coverage to the Plaintiff and also denied providing the Plaintiff with a defense in the Borris matter.

8. Section I(D) of the Policy requires the Defendant to pay, on behalf of the Plaintiff, losses from claims for Wrongful Acts.

9. Wrongful Acts is defined in the contract of insurance that was paid for by the Plaintiff and issued by the Defendant. Wrongful Acts is defined in the Policy of insurance in Section II(G)(1) through (7), among other places. The insuring clause provides that "employment practices wrongful act" means, among other things, workplace harassment, retaliatory treatment and other work-related activities.

10. The contract of insurance also provides that the Defendant will pay the defense cost and expenses of the Plaintiff. Section II(E) of the Policy defines Defense Expenses as reasonable legal fees and expenses incurred by the Plaintiff in either defense or appeal of a qualified claim, such as the Borris matter.

11. The claims made by the plaintiffs in the Borris matter include allegations of workplace harassment, retaliation and other wrongful work-place activities as defined in Section II(G) of the Policy, the defense of which is covered by the Policy.

**Count 1. Breach of Contract**

12. The Plaintiff incorporates Paragraphs 1 through 11 above as if fully set forth herein.

13. The Defendant's denial of coverage of the Plaintiff's defense in the Borris matter was contrary to the terms of the Policy and a breach of contract.

14. As a result of the Defendant's breach of contract, the Plaintiff's have suffered losses in the form of legal expenses and the settlement payment. The Plaintiff's legal expenses were Eighty-Three Thousand, Five Hundred Forty-Eight and 71/100 Dollars ($83,548.71) and the settlement payment was Forty Thousand Dollars ($40,000.00), for a total loss of One Hundred Twenty-Three Thousand, Five Hundred Forty-Eight and 71/100 Dollars ($123,548.71).

**Count 2. Bad Faith Denial of Coverage**

15. The Plaintiff incorporates Paragraphs 1 through 15 above as if fully set forth herein.

16. The Defendant's denial of coverage for the Plaintiff's defense in the Borris matter was done in bad faith.

17. The Plaintiff demanded payment of its losses from the Defendant many times, including but not limited to the letter dated June 7, 2007 from Gary Patrick of Patrick, Beard, Schulman & Jacoway, PC, attached hereto as **Exhibit C**.

18. Over sixty (60) days later, Defendant continues to refuse payment of the Plaintiff's losses, which result directly from the Defendant's bad faith denial of coverage, and Plaintiff is entitled to an additional award of 25% of its losses, or Thirty Thousand, Eight Hundred Eighty-Seven and 18/100 Dollars ($30,887.18), pursuant to T.C.A. §56-7-105.

**WHEREFORE**, the Plaintiff prays as follows:

a.) That process issue requiring the Defendant to answer the allegations of this Complaint within the time provided by law;

b.) That a judgment be entered against the Defendant in the amount of One Hundred Twenty-Three Thousand, Five Hundred Forty-Eight and 71/100 Dollars ($123,548.71) for losses incurred as a result of the Defendant's breach of contract;

c.) That a judgment be entered against the Defendant for Thirty Thousand, Eight Hundred Eighty-Seven and 18/100 Dollars ($30,887.18) pursuant to Tenn. Code Ann. § 56-7-105;

d.) That Plaintiff be awarded attorney fees for this suit, plus interest;

e.) That the Defendant be responsible for all the costs of this action;

f.) That a jury of twelve persons be empanelled to try the issues in this case; and

g.) That the Court award the Plaintiff such other and further relief as is just and proper.

This 29th day of August, 2007.

Respectfully submitted,

**PATRICK, BEARD, SCHULMAN & JACOWAY, P.C.**

By: [signature]

Gary R. Patrick, BPR # 1941
Susie Lodico, BPR #23754
537 Market Street, Suite 202
Chattanooga, TN 37402
(423) 756-7117
(423) 267-5032 – Facsimile

IN THE CIRCUIT COURT OF HAMILTON COUNTY, TENNESSEE

FILED IN ... 2007 AUG 29 ... 3:39 PAULA T. THOMPSON, CLERK BY [signature]

| | | |
|---|---|---|
| **SAFETY AND ECOLOGY CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Docket No.** 07C1073 |
| | ) | |
| **v.** | ) | **Division** ____ |
| | ) | |
| **CHUBB & SON INC.,** | ) | |
| | ) | **JURY DEMAND** |
| **Defendant.** | ) | |

**COST BOND**

We hereby acknowledge and bind ourselves as Principal (as a party) and Surety for the prosecution of this action and payment of all non-discretionary costs in this Court which may at any time be adjudged against the Principal as a party.

Witness My Hand this 29th day of August, 2007.

Respectfully submitted,

**PATRICK, BEARD, SCHULMAN & JACOWAY, P.C.**

By: [signature]

Gary R. Patrick, BPR # 1941
Susie Lodico, BPR #23754
537 Market Street, Suite 202
Chattanooga, TN 37402
(423) 756-7117
(423) 267-5032 – Facsimile

Executive Risk Specialty Insurance Company

*Home Office:*
82 Hopmeadow Street
Simsbury, Connecticut 06070-7683




## DECLARATIONS

POLICY NUMBER:
8166-0873

## THE POWER[SM]
## DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY INCLUDING EMPLOYMENT PRACTICES LIABILITY COVERAGE AND DEFENSE COST COVERAGE

**NOTICE: THIS IS A CLAIMS MADE INDEMNITY POLICY WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD," OR, IF PURCHASED, THE EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED BY THE PAYMENT OF "DEFENSE EXPENSES," AND "DEFENSE EXPENSES" WILL BE APPLIED AGAINST THE APPLICABLE RETENTION. THE COVERAGE AFFORDED UNDER THIS POLICY DIFFERS IN SOME RESPECTS FROM THAT AFFORDED UNDER OTHER POLICIES. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

**OPTIONAL COVERAGE UNDER INSURING AGREEMENT (D) IS NOT AVAILABLE UNDER THIS POLICY.**

ITEM 1. **PARENT CORPORATION** - NAME AND PRINCIPAL ADDRESS:
**Safety and Ecology Corporation**
**SEC Business Center**
**2800 Solway Road**
**Knoxville,TN 37931**

ITEM 2. **POLICY PERIOD:**
(a) Inception Date: June 10, 2000
(b) Expiration Date: June 10, 2001
at 12:01 a.m. both dates at the Principal Address in ITEM 1.

ITEM 3. **LIMITS OF LIABILITY** (inclusive of **Defense Expenses**):

| | | |
|---|---|---|
| (a) | $2,000,000.00 | maximum aggregate limit of liability for all **Claims** made under Insuring Agreements (A), (B)(1), (B)(2) and (C). |
| (b) | Not Covered | maximum aggregate limit of liability for all **Claims** made under Insuring Agreement (D). |
| (c) | $2,000,000.00 | maximum aggregate limit of liability for all **Claims** under this Policy. |

ITEM 4. **PREMIUM:**
$9,500.00 total prepaid premium.

ITEM 5. **RETENTIONS:**

| | | |
|---|---|---|
| (a) | $0.00 | each **Insured Person** each **Claim**, but only for **Loss** as to which indemnification by the **Company** is not legally permissible or is not made solely by reason of the **Company's** financial insolvency. |
| (b) | $25,000.00 | each **Claim**, for **Loss** as to which indemnification by the **Company** is legally permissible. |
| (c) | $25,000.00 | each **Claim** under Insuring Agreement (B)(2). |
| (d) | Not Covered | each **Claim** under Insuring Agreement (D). |

ITEM 6. **LENGTH OF EXTENDED REPORTING PERIOD:**
365 day

ITEM 7. **ADDITIONAL PREMIUM FOR EXTENDED REPORTING PERIOD:** $7,125.00

ITEM 8. **NOTICE UNDER CONDITIONS (G)(1) AND (G)(2) MUST BE ADDRESSED TO:**
Vice President of Claims
Executive Risk Management Associates
P. O. Box 2002
Simsbury, CT 06070-7683

ITEM 9. **ENDORSEMENTS ATTACHED AT ISSUANCE:**
B22671 (1/96 ed.)
D21376 (2/95 ed.)
D25024 (8/97 ed.)
D25025 (8/97 ed.)
D25026 (8/97 ed.)
D25027 (8/97 ed.)
D25484 (12/97 ed.)

**These Declarations, the signed and completed Application and the Policy, with endorsements, will constitute the entire agreement between the Underwriter, the Company and the Insured Persons.**

EXECUTIVE RISK SPECIALTY INSURANCE COMPANY by (Authorized Company Representative):

John P Kearney

Form B24776 (7/97 ed.)

EXHIBIT
tabbies
A

Catalog No. SC97d-S

**THIS IS A CLAIMS MADE INDEMNITY POLICY
WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY.
PLEASE READ THE ENTIRE POLICY CAREFULLY.**

# EXECUTIVE RISK SPECIALTY INSURANCE COMPANY

## THE POWER[SM]
## A CORPORATE LIABILITY POLICY

## INCLUDING DIRECTORS AND OFFICERS LIABILITY INSURANCE, EMPLOYMENT PRACTICES LIABILITY COVERAGE AND ADDITIONAL DEFENSE COST COVERAGE OPTION

**Executive Risk Specialty Insurance Company (the "Underwriter"), the Insured Persons and the Company, subject to all of the terms, conditions and limitations of and any endorsements to this Policy, agree as follows:**

## I. INSURING AGREEMENTS

(A) The Underwriter will pay on behalf of the **Insured Persons Loss** from **Claims**, other than **Defense Claims**, first made against them during the **Policy Period** for **Wrongful Acts** unless the **Company** pays such **Loss** to or on behalf of the **Insured Persons** as indemnification.

(B) The Underwriter will pay on behalf of the **Company**:

(1) **Loss** from **Claims**, other than **Defense Claims**, first made against the **Insured Persons** during the **Policy Period** for **Wrongful Acts** if the **Company** pays such **Loss** to or on behalf of the **Insured Persons** as indemnification; and

(2) **Loss** from **Claims**, other than **Defense Claims**, first made against the **Company** during the **Policy Period** for **Wrongful Acts**.

(C) As part of and subject to the applicable limit of liability stated in ITEM 3 of the Declarations, the Underwriter will have the right and duty to defend any **Claim** as described in INSURING AGREEMENTS (A) and (B), even if such **Claim** is groundless, false or fraudulent.

(D) (OPTIONAL COVERAGE) If it is stated in the Declarations that coverage has been made available under this INSURING AGREEMENT (D), as part of and subject to the applicable limit of liability stated in ITEM 3 of the Declarations, the Underwriter will have the right and duty to defend the **Insureds** in connection with any **Defense Claim** even if such **Defense Claim** is groundless, false or fraudulent.

## II. DEFINITIONS

(A) "**Application**" means the application attached to and forming part of this Policy, including any materials submitted in connection therewith, all of which are on file with the Underwriter and are a part of the Policy, as if physically attached. If the Application uses terms or phrases that differ from terms defined in this Policy, no inconsistency between any term or phrase used in the Application and any term defined in this Policy will waive or change any of the terms, conditions and limitations of this Policy.

(B) "**Claim**" means any written notice received by an **Insured** that any person or entity intends to hold any **Insured** responsible for a **Wrongful Act**. The term **Claim** shall include any **Defense Claim.** A **Claim** will be deemed to have been made when such written notice is first received by any **Insured**.

(C) "**Company**" means the **Parent Corporation** and any **Subsidiary** created or acquired on or before the Inception Date in ITEM 2(a) of the Declarations or, subject to CONDITION (H), during the **Policy Period**.

(D) "**Defense Claim**" means, subject to all the terms, conditions, limitations and EXCLUSIONS (C) of this Policy, any **Claim** during any time in which the **Claim** contains only allegations which are excluded from coverage under INSURING AGREEMENT (A), (B), or (C) because of an exclusion set forth in EXCLUSIONS (B).

(E) "**Defense Expenses**" means reasonable legal fees and expenses incurred by or on behalf of the **Insureds** in the defense or appeal of a **Claim**, subject to the Underwriter's right and duty to defend as set forth in INSURING AGREEMENTS (C) and (D); provided, that **Defense Expenses** will not include the **Company's** overhead expenses or any salaries, wages, fees or benefits of its directors, officers or **Employees**.

(F) "**Employee**" means any individual whose labor or service is engaged by and directed by the **Company**. This includes part-time, seasonal and temporary **Employees** as well as any individual employed in a supervisory or managerial position. Independent contractors are not **Employees**.

(G) "**Employment Practices Wrongful Act**" means any actual or alleged:

(1) failure or refusal to hire any person, failure or refusal to promote any person, demotion or discharge of any person, employment-related defamation, wrongful failure to grant tenure, or limitation, segregation or classification of **Employees** or applicants for employment in any way that would deprive or tend to deprive any person of employment opportunities or otherwise adversely affect his or her status as an **Employee**, because of such person's race, color, religion, age, sex, national origin, disability, pregnancy, sexual orientation or preference, or other status that is protected pursuant to any applicable federal, state or local statute or ordinance;

(2) unwelcome sexual advances, requests for sexual favors, or other verbal, visual or physical conduct of a sexual nature that is made a condition of employment with the **Company**, is used as a basis for employment decisions with the **Company**, creates a work environment within the **Company** that interferes with performance, or creates an intimidating, hostile, or offensive working environment;

(3) workplace harassment (i.e., harassment of a non-sexual nature) which creates a work environment within the **Company** that interferes with performance, or creates an intimidating, hostile, or offensive working environment;

(4) retaliatory treatment against an **Employee** of the **Company** on account of such **Employee's** exercise or attempted exercise of his or her rights under law;

(5) employment-related misrepresentation, negligent evaluation, wrongful discipline, or wrongful deprivation of career opportunity;

(6) actual or constructive termination of the employment of, or demotion of, or failure or refusal to promote, any **Employee** which is in violation of law or is against public policy, or is in breach of an implied agreement to continue employment; or

(7) breach of an implied contract or agreement relating to employment, whether arising out of any personnel manual, policy statement or other representation.

(H) "**Insured**" means any **Insured Person** and the **Company**.

(I) "**Insured Person**" means:

(1) any past, present or future director or officer of the **Company**; and

(2) any past, present or future **Employee** of the **Company**; provided, that **Employees**, unlike directors and officers, will be **Insured Persons** only if and to the extent that **Claims** are made against them for **Employment Practices Wrongful Acts**.

In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** for a **Wrongful Act** of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

(J) "**Loss**" means **Defense Expenses** and damages (including back pay awards and front pay awards), pre-judgment interest, post-judgment interest, judgments, settlements or other amounts that an **Insured** is obligated to pay as a result of a **Claim**. **Loss** shall include any punitive or exemplary damages, if insurable under the law pursuant to which this Policy is construed, (1) that an **Insured Person** is obligated to pay as a result of a **Claim**, or (2) up to an amount not to exceed $25,000 that the **Company** is obligated to pay as a result of a **Claim**.

(K) "**Outside Capacity**" means service by an **Insured Person** as a director, officer, trustee, regent or governor of an **Outside Entity**, but only during such time that such service is at the specific written request of the **Company**.

(L) "**Outside Entity**" means a corporation or organization other than the **Company** which is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code, as the same may be amended from time to time.

(M) "**Parent Corporation**" means the entity named in ITEM 1 of the Declarations.

(N) "**Policy Period**" means the period from the Inception Date to the Expiration Date in ITEM 2 of the Declarations or to any earlier cancelation date.

(O) "**Related Claims**" means all **Claims** for **Wrongful Acts** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

(P) "**Subsidiary**" means any entity during any time in which the **Parent Corporation** owns or controls, directly or through one or more **Subsidiaries**, the right to elect or appoint more than fifty percent (50%) of such entity's directors or trustees.

(Q) "**Wrongful Act**" means:

(1) any **Employment Practices Wrongful Act** by an **Insured Person** in his or her capacity as a director, officer or **Employee** of the **Company**;

(2) any other actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by an **Insured Person** in his or her capacity as a director or officer of the **Company**;

(3) any matter asserted against an **Insured Person** solely by reason of his or her status as a director or officer of the **Company**;

(4) any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by an **Insured Person** in his or her **Outside Capacity**; and

(5) any **Employment Practices Wrongful Act** by the **Company** or any other actual or alleged error, omission, misstatement, misleading statement or breach of duty by the **Company**.

## III. EXCLUSIONS

(A) No coverage will be available under INSURING AGREEMENTS (A) and (B) of this Policy for **Loss**, other than **Defense Expenses**, which an **Insured** is obligated to pay:

(1) as a result of a **Claim** brought about or contributed to in fact by any dishonest or fraudulent act or omission or any willful violation of any statute, rule or law by any **Insured**, or by the gaining by any **Insured** of any profit, remuneration or advantage to which such **Insured** is not legally entitled; provided, that each **Insured** agrees that, if it is finally established that the Underwriter has no liability to an **Insured** for **Loss** as a result of a **Claim** by reason of this EXCLUSION (A)(1), such **Insured** will repay the Underwriter upon demand all **Defense Expenses** paid on behalf of such **Insured** in connection with such **Claim**;

(2) as a result of any portion of a **Claim** seeking relief or redress in any form other than money damages; or

(3) by operation of the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, any workers' compensation, unemployment insurance, social security, or disability benefits law, other similar provisions of any federal, state or local statutory or common law or any rules or regulations promulgated under any of the foregoing.

(B) No coverage will be available under INSURING AGREEMENTS (A), (B) and (C) of this Policy for:

(1) fines, taxes or penalties, the multiplied portion of any multiplied damage award, or matters which are uninsurable under the law pursuant to which this Policy will be construed; provided, that if applicable law so permits, this EXCLUSION (B)(1) will not apply to punitive or exemplary damages for which coverage is provided under this Policy pursuant to DEFINITION (J);

(2) any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

(a) any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, damage to or destruction of any tangible property including loss of use thereof, libel, slander, oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium; provided, that this EXCLUSION (B)(2)(a) will not apply to allegations of mental anguish, emotional distress or libel, slander or oral or written publication of defamatory or disparaging material if and only to the extent that such allegations are made as part of a **Claim** for an **Employment Practices Wrongful Act**;

(b) any actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of, any smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials (including materials which are intended to be or have been recycled, reconditioned or reclaimed) or other irritants, pollutants or contaminants, or any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any of the foregoing, or any action taken in contemplation or anticipation of any such regulation, order, direction or request, including but not limited to any such **Claim** alleging damage to the **Company** or to its shareholders;

(c) any fact, circumstance, situation, transaction, event or **Wrongful Act**:

(i) underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding of which any **Insured** had received written notice before the Inception Date in ITEM 2(a) of the Declarations; or

(ii) which, before the Inception Date in ITEM 2(a) of the Declarations, was the subject of any notice given by or on behalf of any **Insured** under any other policy of insurance; or

(d) any actual or alleged nuclear reaction, nuclear radiation, radioactive contamination, or radioactive substance;

(3) any **Claim** by or on behalf of, or in the name or right of, the **Company** or any **Insured Person**, except that this EXCLUSION (B)(3) will not apply to:

(a) any derivative action by a security holder of the **Company** on behalf of, or in the name or right of, the **Company**, if such action is brought and maintained independently of, and without the solicitation, assistance, participation or intervention of, the **Company** or any **Insured Person**;

(b) any **Claim** in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an **Insured Person** which is part of or results directly from a **Claim** which is not otherwise excluded by the terms of this Policy; or

(c) any **Claim** by an **Insured Person** for an **Employment Practices Wrongful Act**;

(4) any **Claim** for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 or any regulations promulgated thereunder, or of any similar provisions of federal, state or local law or regulation;

(5) any **Claim** against any **Subsidiary** or other entity acquired by the **Company**, whether by merger, consolidation or otherwise, or against any **Insured Person** of such **Subsidiary** or other entity in his or her capacity as such for any **Wrongful Act**, including any **Employment Practices Wrongful Act**, committed during any time in which such entity is not a **Subsidiary** or at any time before the **Company's** acquisition of such entity;

(6) any **Claim** arising out of any actual or alleged liability of the **Company** under any express contract or agreement. For the purposes of this EXCLUSION (B)(6), an "express contract or agreement" is an actual agreement among the contracting parties, the terms of which are openly stated in distinct or explicit language, either orally or in writing, at the time of its making. This EXCLUSION (B)(6) will apply only to the coverage available to the **Company** under INSURING AGREEMENT (B)(2);

(7) any **Claim** by or on behalf of, or in the name or right of, any **Outside Entity** against an **Insured Person** for a **Wrongful Act** in his or her **Outside Capacity** with respect to such **Outside Entity**.

No **Wrongful Act** of any **Insured Person** will be imputed to any other **Insured Person** to determine the application of any EXCLUSIONS set forth in EXCLUSIONS (A) or (B) above.

(C) No coverage will be available under INSURING AGREEMENT (D) of this Policy for:

(1) **Loss**, other than **Defense Expenses**, from any **Defense Claim**;

(2) any **Defense Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

(a) any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, damage to or destruction of any tangible property including loss of use thereof, libel, slander, oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium;

(b) any actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of, any smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials (including materials which are intended to be or have been recycled, reconditioned or reclaimed) or other irritants, pollutants or contaminants, or any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any of the foregoing, or any action taken in contemplation or anticipation of any such regulation, order, direction or request, including but not limited to any such **Defense Claim** alleging damage to the **Company** or to its shareholders;

(c) any fact, circumstance, situation, transaction, event or **Wrongful Act**:

(i) underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding of which any **Insured** had received written notice before the Inception Date in ITEM 2(a) of the Declarations; or

(ii) which, before the Inception Date in ITEM 2(a) of the Declarations, was the subject of any notice given by or on behalf of any **Insured** under any other policy of insurance; or

(d) any actual or alleged nuclear reaction, nuclear radiation, radioactive contamination, or radioactive substance; or

(3) any **Claim** for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 or any regulations promulgated thereunder, or of any similar provisions of federal, state or local law or regulation.

## IV. CONDITIONS

(A) **Limit of Liability**:

(1) Regardless of the number of **Claims**, the number of persons or entities included within the definition of **Insured**, or the number of claimants who make **Claim** against the **Insureds**:

(a) The amount stated in ITEM 3(a) of the Declarations shall be the maximum limit of liability of the Underwriter for all **Loss**, including **Defense Expenses**, resulting from each **Claim** or **Related Claims** made against the **Insureds** for which this Policy provides coverage, regardless of whether such **Claim** or **Related Claims** is/are made during the **Policy Period** or the Extended Reporting Period, and regardless of the time of payment by the Underwriter. The amount stated in ITEM 3(a) of the Declarations shall be part of, included in, and not in addition to the amount stated in ITEM 3(c) of the Declarations.

(b) If it is stated in the Declarations that coverage has been made available under INSURING AGREEMENT (D), the amount stated in ITEM 3(b) of the Declarations shall be the maximum limit of liability of the Underwriter for all **Defense Expenses** resulting from each **Defense Claim** made against the **Insureds** for which this Policy provides coverage, regardless of whether such **Defense Claim** is made during the **Policy Period** or the Extended Reporting Period, and regardless of the time of payment by the Underwriter. The amount stated in ITEM 3(b) of the Declarations shall be part of, included in, and not in addition to the amount stated in ITEM 3(c) of the Declarations.

(c) The amount stated in ITEM 3(c) of the Declarations shall be the maximum aggregate limit of liability of the Underwriter for all **Loss**, including **Defense Expenses**, resulting from all **Claims** for which this Policy provides coverage, regardless of whether such **Claims** are made during the **Policy Period** or the Extended Reporting Period, and regardless of the time of payment by the Underwriter.

(2) If any **Claim** made against the **Insured Persons** gives rise to coverage both under this Policy and under any other policy or policies of directors and officers liability or other similar insurance issued by the Underwriter or any other affiliate of the Underwriter to any **Outside Entity**, the Underwriter's and, if applicable, such affiliate's maximum aggregate limit of liability under all such policies for all **Loss**, including **Defense Expenses**, in respect of such **Claim** will not exceed the largest single available limit of liability under any such policy, including this Policy.

(3) **Defense Expenses** are part of and not in addition to the Underwriter's limit of liability, and payment of **Defense Expenses** by the Underwriter will reduce its limit of liability.

(B) **Application of Retention; Presumption of Indemnification**:

(1) The obligation of the Underwriter to pay **Loss**, including **Defense Expenses**, will only be in excess of the applicable retention set forth in ITEM 5 of the Declarations. The Underwriter will have no obligation whatsoever, either to the **Insureds** or to any other person or entity, to pay all or any portion of any retention amount on behalf of any **Insured**, although the Underwriter will, at its sole discretion, have the right and option to do so, in which event the **Insureds** agree to repay the Underwriter any amounts so paid.

(2) The certificate of incorporation, charter, articles of association or other organizational documents of the **Parent Corporation**, each **Subsidiary** and each **Outside Entity**, including bylaws and resolutions, will be deemed to have been adopted or amended to provide indemnification to the **Insured Persons** to the fullest extent permitted by law.

(3) Regardless of whether **Loss** in connection with any **Claim** against the **Insured Persons** (including any **Claim** against the **Insured Persons** for **Wrongful Acts** in their **Outside Capacities**) is payable under INSURING AGREEMENT (A) or (B)(1), the retention set forth in ITEM 5(b) of the Declarations will apply to any **Loss** as to which indemnification by the **Company** or any **Outside Entity** is legally permissible, whether or not actual indemnification is made, unless such indemnification is not made by the **Company** or such **Outside Entity** solely by reason of its financial insolvency.

(4) If different retentions are applicable to different parts of any **Claim**, the applicable retentions will be applied separately to each part of such **Claim**, but the sum of such retentions will not exceed the largest applicable retention as set forth in ITEM 5 of the Declarations.

(C) **Defense and Settlement of Claims:**

(1) No **Insured** may incur any **Defense Expenses** or admit liability for or settle any **Claim** without the Underwriter's written consent. The Underwriter will have the right to make investigations and, except with respect to the coverage afforded under INSURING AGREEMENT (D), conduct negotiations and, with the consent of the **Insureds**, enter into such settlement of any **Claim** as the Underwriter deems appropriate. If the **Insureds** refuse to consent to a settlement acceptable to the claimant in accordance with the Underwriter's recommendation:

(a) the **Insureds** will thereafter be responsible for negotiating and defending such **Claim** at their own expense independently of the Underwriter; and

(b) subject to the Underwriter's maximum aggregate limit of liability as set forth in ITEM 3(c) of the Declarations, the Underwriter's liability in respect of any such **Claim** will not exceed the amount for which such **Claim** could have been settled by the Underwriter plus **Defense Expenses** up to the date the **Insureds** refused to settle such **Claim**.

(2) The Underwriter will have no obligation to pay **Loss**, including **Defense Expenses**, or to defend or continue to defend any **Claim** after the Underwriter's applicable limit of liability, as set forth in ITEM 3 of the Declarations, has been exhausted by the payment of **Loss**, including **Defense Expenses**. If the Underwriter's maximum aggregate limit of liability, as set forth in ITEM 3(c) of the Declarations, is exhausted by the payment of **Loss**, including **Defense Expenses**, the premium will be fully earned.

(D) **Other Insurance; Other Indemnification:**

(1) All **Loss** payable under this Policy will be specifically excess of and will not contribute with other valid insurance (whether collectible or not), including but not limited to any other insurance under which there is a duty to defend, unless such other insurance is specifically stated to be in excess of this Policy. This Policy will not be subject to the terms of any other insurance.

(2) All coverage for **Loss** from **Claims** against **Insured Persons** for **Wrongful Acts** in their **Outside Capacities** will be specifically excess of, and will not contribute with, any other valid insurance (whether collectible or not) available to such **Insured Persons** by reason of their service in **Outside Capacities**, and any indemnification by any person or entity other than the **Company**, including any **Outside Entity**, available to such **Insured Persons** in connection with their service in **Outside Capacities**.

(E) **Cooperation; Subrogation:**

In the event of a **Claim**, the **Insureds** will provide the Underwriter with all information, assistance and cooperation that the Underwriter reasonably requests, and will do nothing that may prejudice the Underwriter's position or potential or actual rights of recovery. At the Underwriter's request, the **Insureds** will assist in the conduct of actions, suits or proceedings, including but not limited to attending hearings, trials and depositions, securing and giving evidence and obtaining the attendance of witnesses, and will also assist in making settlements. In the event of payment, the Underwriter will be subrogated to the extent of any payment to all of the rights of recovery of the **Insureds**. The **Insureds** will execute all papers and do everything necessary to secure such rights, including the execution of any documents necessary to enable the Underwriter effectively to bring suit in their name. The obligations of the **Insureds** under this CONDITION (E) will survive the Policy.

(F) **Extended Reporting Period:**

If either the Underwriter or the **Parent Corporation** refuses or declines to renew this Policy for any reason and, within thirty (30) days of the end of the **Policy Period**, the **Parent Corporation** elects to purchase the Extended Reporting Period set forth in ITEM 6 of the Declarations by paying the additional premium set forth in ITEM 7 of the Declarations, then the coverage otherwise afforded by this Policy will be extended to apply to **Loss** from **Claims** first made during the Extended Reporting Period, but only if such **Claims** are for **Wrongful Acts** committed before the end of the **Policy Period** or the date of any conversion of coverage under CONDITION (I), whichever is earlier.

(G) **Notice; Timing and Interrelationship of Claims:**

(1) As a condition precedent to any right to payment in respect of any **Claim**, including any **Claim** for a **Wrongful Act** of which notice was previously given under CONDITION (G)(2), the **Insureds** must give the Underwriter written notice of such **Claim**, with full details, as soon as practicable after it is first made.

(2) If, during the **Policy Period**, the **Insureds** first become aware of a **Wrongful Act** which may subsequently give rise to a **Claim** and, as soon as practicable thereafter but before the expiration or cancelation of the Policy:

(a) give the Underwriter written notice of such **Wrongful Act**, including a description of the **Wrongful Act** in question, the identities of the potential claimants, the consequences which have resulted or may result from such **Wrongful Act**, the damages which may result from such **Wrongful Act** and the circumstances by which the **Insureds** first became aware of such **Wrongful Act**, and

(b) request coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**;

then the Underwriter will treat any such subsequently resulting **Claim** as if it had been first made during the **Policy Period.**

(3) All notices under CONDITIONS (G)(1) and (2) must be sent by certified mail to the address set forth in ITEM 8 of the Declarations.

(4) All **Related Claims** will be treated as a single **Claim** made when the earliest of such **Related Claims** was first made, or when the earliest of such **Related Claims** is treated as having been made in accordance with CONDITION (G)(2), whichever is earlier.

(5) A **Defense Claim** shall be deemed made when the **Claim** containing allegations that ultimately give rise to such **Defense Claim** is first made, without regard to whether such allegations triggered coverage under INSURING AGREEMENT (D) at the time when such **Claim** was first made.

(H) **Adjustments**:

If, during the **Policy Period**, any of the following events occurs:

(1) the **Company** acquires any assets, acquires a **Subsidiary** or acquires any entity by merger and, at the time of such transaction, the assets so acquired or the assets of the entity so acquired exceed twenty-five percent (25%) of the total assets of the **Company** as reflected in the **Company's** most recent audited consolidated financial statements; or

(2) the **Company** assumes any liabilities and, at the time of such assumption, the liabilities so assumed exceed twenty-five percent (25%) of the total liabilities of the **Company** as reflected in the **Company's** most recent audited consolidated financial statements;

such entity will be included within the term "**Subsidiary**" for a period of ninety (90) days after the date of such transaction. There will be no coverage under this Policy in respect of any **Claim** against the **Insureds** which is first made more than ninety (90) days after the effective date of the transaction described in (1) or (2) above unless the Underwriter has received written notice containing full details of such transaction and the Underwriter, at its sole discretion, has agreed to provide such coverage upon such terms, conditions and limitations of coverage and such additional premium in connection with the foregoing as it may require. No coverage will be available under this Policy for **Loss**, including **Defense Expenses**, from any **Claim** against any entity, or the **Insured Persons** of any entity, included within the term "**Subsidiary**" by reason of this CONDITION (H) for any **Wrongful Act** committed or allegedly committed before the date of such transaction.

(I) **Conversion of Coverage Under Certain Circumstances**:

If, during the **Policy Period**, any of the following events occurs:



(1) the acquisition of the **Parent Corporation**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of the **Parent Corporation** into or with another entity such that the **Parent Corporation** is not the surviving entity;

(2) the appointment of a receiver, conservator, trustee, liquidator or rehabilitator, or any similar official, for or with respect to the **Parent Corporation**; or

(3) the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate at least fifty percent (50%) of the directors of the **Parent Corporation**;

coverage under this Policy will continue in full force and effect with respect to **Claims** for **Wrongful Acts** committed before such event, but coverage will cease with respect to **Claims** for **Wrongful Acts** committed after such event. After any such event, the Policy may not be canceled, regardless of CONDITION (J)(2), and the entire premium for the Policy will be deemed fully earned.

(J) **Cancelation; No Obligation to Renew**:

(1) The Underwriter may not cancel this Policy except for failure to pay a premium when due, in which case twenty (20) days' written notice will be given.

(2) The **Parent Corporation** may cancel this Policy by mailing to the Underwriter written notice stating when, not later than the Expiration Date set forth in ITEM 2(b) of the Declarations, such cancelation will be effective. In such event, the earned premium will be computed in accordance with the customary short rate table and procedure. Premium adjustment may be made either at the time cancelation by the **Parent Corporation** is effective or as soon as practicable thereafter, but payment or tender by the Underwriter of unearned premium is not a condition of cancelation by the **Parent Corporation**.

(3) The Underwriter will not be required to renew this Policy upon its expiration. If the Underwriter elects not to renew this Policy, the Underwriter will deliver or mail to the **Parent Corporation** written notice to that effect at least sixty (60) days before the Expiration Date set forth in ITEM 2(b) of the Declarations.



(K) **Representations; Severability:**

The **Insureds** represent that the particulars and statements contained in the **Application** are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and to constitute a part of this Policy, are the basis of this Policy. No knowledge or information possessed by any **Insured** will be imputed to any other **Insured**, except for material facts or information known to the person or persons who signed the **Application**. In the event of any material untruth, misrepresentation or omission in connection with any of the particulars or statements in the **Application**, this Policy will be void with respect to any **Insured** who knew of such untruth, misrepresentation or omission or to whom such knowledge is imputed.

(L) **Spouses of Insured Persons:**

(1) The coverage afforded under this Policy will, subject to all of its terms, conditions, limitations and exclusions, be extended to apply to **Loss** resulting from a **Claim** made against a person who, at the time the **Claim** is made, is a lawful spouse of an **Insured Person**, but only if:

(a) the **Claim** against such spouse results from a **Wrongful Act** actually or allegedly committed by the **Insured Person** to whom the spouse is married, and

(b) such **Insured Person** and his or her spouse are represented by the same counsel in connection with such **Claim**.

(2) No spouse of an **Insured Person** will, by reason of this CONDITION (L), have any greater right to coverage under this Policy than the **Insured Person** to whom such spouse is married.

(3) The Underwriter will not be liable under this CONDITION (L) to make any payment of **Loss** in connection with any **Claim** against a spouse of an **Insured Person** for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by such spouse.

(M) **No Action Against the Underwriter**:

(1) No action may be taken against the Underwriter unless, as conditions precedent thereto, there has been full compliance with all of the terms of this Policy and the amount of the **Insureds'** obligation to pay has been finally determined either by judgment against the **Insureds** after adjudicatory proceedings, or by written agreement of the **Insureds**, the claimant and the Underwriter.

(2) No person or entity will have any right under this Policy to join the Underwriter as a party to any **Claim** to determine the liability of any **Insured**; nor may the Underwriter be impleaded by an **Insured** or his, her or its legal representative in any such **Claim**. The Underwriter will not be relieved of any of its obligations under the Policy by the bankruptcy or insolvency of any of the **Insureds** or their estates.

(N) **Authorization and Notices**:

The **Insureds** agree that the **Parent Corporation** will act on their behalf with respect to receiving any notices and return premiums from the Underwriter.

(O) **Changes:**

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Underwriter will not effect a waiver or change in any part of this Policy or estop the Underwriter from asserting any right under the terms, conditions and limitations of this Policy. The terms, conditions and limitations of this Policy can be waived or changed only by written endorsement.

(P) **Assignment:**

No assignment of interest under this Policy will bind the Underwriter without its consent.

(Q) **Entire Agreement:**

The **Insureds** agree that this Policy, including the **Application** and any endorsements, constitutes the entire agreement between them and the Underwriter or any of its agents relating to this insurance.

(R) **Headings**:

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**In witness whereof the Underwriter has caused this Policy to be executed on the Declarations Page.**

Secretary

Co-Chairman

ENDORSEMENT NO. 1
SERVICE OF SUIT ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on June 10, 2000, forms part of

| | |
|---|---|
| Policy No. | 8166-0873 |
| Issued to | Safety and Ecology Corporation |
| Issued by | Executive Risk Specialty Insurance Company |

In consideration of the premium charged, it is hereby understood and agreed that the following Condition is made part of this Policy:

SERVICE OF SUIT.
In the event of any failure by the Underwriter to pay any amount claimed to be due under this Policy, the Underwriter, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. This endorsement does not constitute and should not be understood to constitute an agreement by the Underwriter that any action, suit or proceeding is properly maintained in a specific forum, nor may it be construed as a waiver of the Underwriter's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States, all of which rights the Underwriter expressly reserves. It is further agreed that service of process in such suit may be made upon Senior Vice President, Claims, Executive Risk Specialty Insurance Company, 82 Hopmeadow Street, Simsbury, CT 06070 or his or her representative, and that in any suit instituted against the Underwriter upon this contract, the Underwriter will abide by the final decision of such court or of any appellate court in the event of any appeal.

Pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Underwriter hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose by statute, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named Senior Vice President as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms, conditions and limitations of this Policy shall remain unchanged.

John P Kearney

Authorized Representative

ENDORSEMENT NO. 2
AMEND ADDRESS ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on June 10, 2000, forms part of

| | |
|---|---|
| Policy No. | 8166-0873 |
| Issued to | Safety and Ecology Corporation |
| Issued by | Executive Risk Specialty Insurance Company |

In consideration of the premium charged, the principal address of the Parent Corporation set forth in Item 1 of the Declarations is amended to read as follows:

SEC Business Center
2800 Solway Road
Knoxville, TN 37931

All other terms, conditions and limitations of this Policy shall remain unchanged.

John P Kearney

Authorized Representative

ENDORSEMENT NO. 3
PRODUCT EXCLUSION

This Endorsement, effective at 12:01 a.m. on June 10, 2000, forms part of

Policy No. 8166-0873
Issued to Safety and Ecology Corporation
Issued by Executive Risk Specialty Insurance Company

In consideration of the premium charged:

(1) No coverage will be available under this Policy for Loss from any Claims against the Company, other than Defense Claims, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency or inadequacy in the design or manufacture of such product.

(2) Solely for purposes of Insuring Agreement (D) of this Policy, paragraph (1) of this endorsement will be deemed to be an exclusion set forth in Section III exclusions (B) of this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

John P Kearney

Authorized Representative

D25024 (8/97)

## ENDORSEMENT NO. 4
## INTELLECTUAL PROPERTY EXCLUSION

This Endorsement, effective at 12:01 a.m. on June 10, 2000, forms part of

| | |
|---|---|
| Policy No. | 8166-0873 |
| Issued to | Safety and Ecology Corporation |
| Issued by | Executive Risk Specialty Insurance Company |

In consideration of the premium charged:

(1) No coverage will be available under this Policy for Loss from any Claims against the Company, other than Defense Claims, based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged infringement of any patent, copyright, trademark or service mark, including any actual or alleged violation of any law or statute, or rule or regulation promulgated thereunder or of any provision of the common law imposing liability in connection therewith.

(2) Solely for purposes of Insuring Agreement (D) of this Policy, paragraph (1) of this endorsement will be deemed to be an exclusion set forth in Section III exclusions (B) of this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

John P Kearney

Authorized Representative

D25025 (8/97)

ENDORSEMENT NO. 5
SECURITIES EXCLUSION

This Endorsement, effective at 12:01 a.m. on June 10, 2000, forms part of

| | |
|---|---|
| Policy No. | 8166-0873 |
| Issued to | Safety and Ecology Corporation |
| Issued by | Executive Risk Specialty Insurance Company |

In consideration of the premium charged, no coverage will be available under this Policy for Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of:

(1) the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, any other federal law, rule or regulation with respect to the regulation of securities, any rules or regulations of the United States Securities and Exchange Commission, or any amendment of such laws, rules or regulations; or

(2) any state securities or "Blue Sky" laws or rules or regulations or any amendment of such laws, rules or regulations; or

(3) any provision of the common law imposing liability in connection with the offer, sale or purchase of securities.

All other terms, conditions and limitations of this Policy shall remain unchanged.

John P Kearney

Authorized Representative

D25026 (8/97)

ENDORSEMENT NO. 6
GENERAL E&O EXCLUSION

This Endorsement, effective at 12:01 a.m. on June 10, 2000, forms part of

Policy No. 8166-0873
Issued to Safety and Ecology Corporation
Issued by Executive Risk Specialty Insurance Company

In consideration of the premium charged, no coverage will be available under this Policy for Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty in connection with the rendering of, or actual or alleged failure to render, any services for a fee or commission or on any other compensated basis by any person or entity otherwise entitled to coverage under this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

John P Kearney

Authorized Representative

D25027 (8/97)

ENDORSEMENT NO. 7
PRIOR AND PENDING LITIGATION EXCLUSION

This Endorsement, effective at 12:01 a.m. on June 10, 2000, forms part of

| | |
|---|---|
| Policy No. | 8166-0873 |
| Issued to | Safety and Ecology Corporation |
| Issued by | Executive Risk Specialty Insurance Company |

In consideration of the premium charged:

(1) Section III Exclusions (B)(2)(c)(i) is amended to read in its entirety as follows:

"(i) underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding of which any Insured had received written notice (a) before June 10, 1998, with respect to any Claim against an Insured Person, or (b) before June 10, 1998, with respect to any Claim against the Company; or"

(2) In addition to and not in limitation of the foregoing, the Underwriter shall not pay Loss for Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation, transaction, event or Wrongful Act underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding as of June 10, 2000 to the extent that the amount of such Loss, when added to the amount of any Loss previously paid under this Policy exceeds $1,000,000.00.

All other terms, conditions and limitations of this Policy shall remain unchanged.

John P Kearney

Authorized Representative

# END OF POLICY PACKAGE

Policy Number: 8166-0873

Final Page

# U.S. District Court
# Southern District of Ohio (Columbus)
# CIVIL DOCKET FOR CASE #: 2:06-cv-00873-EAS-MRA

United States of America et al v. Bechtel-Jacobs Company LLC et al
Assigned to: Edmund A Sargus
Referred to: Mark R. Abel
Cause: 31:3729 False Claims Act

Date Filed: 10/17/2006
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Plaintiff

**Plaintiff**

**United States of America**
*ex rel Borris*

represented by **Kenneth F Affeldt**
US Attorney's Office
303 Marconi Boulevard
2nd Floor
Columbus, OH 43215
614-469-5715
Email: ken.affeldt@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ann Louise Lugbill**
2406 Auburn Avenue
Cincinnati, OH 45219
513-784-1280
Email: alugbill@choice.net
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Philip Borris**

represented by **Ann Louise Lugbill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth F Affeldt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Eversole**

represented by **Ann Louise Lugbill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth F Affeldt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rodney Gossett**

represented by **Ann Louise Lugbill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*



**Kenneth F Affeldt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Thomas McDermott** represented by **Ann Louise Lugbill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth F Affeldt**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bechtel-Jacobs Company LLC**

**Defendant**

**Safety Ecology Corporation**

**Defendant**

**McDonald Consulting Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/17/2006 | 1 | Sealed Document. Protective Order Regarding Realator's Statement. Originally filed on 1/25/02.(kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 2 | Sealed Document. Order. Originally filed 1/25/02. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 3 | Sealed Document. Government's unopposed Ex Parte Application for an extension of time in which to elect to intervene. Originally filed on 4/19/02. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 4 | Sealed Document. Order granting extension of time. Extended to 10/8/02. Originally filed on 4/18/02. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 5 | Sealed Document. The Government's Ex Parte Application for an extension of time in which to elect to intervene. Originally filed on 10/8/02. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 6 | Sealed Document. Order granting extension of time. Extended to 4/8/03. Originally filed on 11/15/02. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 7 | Sealed Document. Notice of Substitution of Counsel. Kenneth F. Affeldt for Plaintiff. Originally filed on 8/29/02. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 8 | Sealed Document. Government's Ex Parte Application for an extension of time in which to elect to intervene. Originially filed on 4/03/03. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 9 | Sealed Document. Order granting extension of time. Extended to 9/8/03. Originally filed on 4/4/03. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 10 | Sealed Document. Government's Ex Parte Application for an extension of time |

| | | in which to elect to intervene. Originally filed on 9/5/03. (kch1) (Entered: 10/18/2006) |
|---|---|---|
| 10/17/2006 | 11 | Sealed Document. Order granting extension of time. Extended to 3/8/04. Originally filed on 9/8/03. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 12 | Sealed Document. Government's Ex Parte Application for an extension of time in which to elect to intervene. Originally filed on 3/2/05. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 13 | Sealed Document. Order granting extension of time. Extended to 9/8/05. Originally filed on 3/7/05. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 14 | Sealed Document. Government's Ex Parte Application for an extension of time in which to elect to intervene. Originally filed on 9/8/05. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 15 | Sealed Document. Order granting extension of time. Extended to 12/8/05. Originally filed on 9/28/05. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 16 | Sealed Document. Government's Ex Parte Application for an extension of time in which to elect to intervene. Originally filed on 12/8/05. (Attachments: # (1) Text of Proposed Order)(kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 17 | Sealed Document. Government's Ex Parte Application for an extension of time in which to elect to intervene. Originally filed on 4/7/06. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 18 | Sealed Document. Order granting extension of time. Extended to 7/8/06. Originally filed on 4/11/06. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 19 | Sealed Document. Government's Ex Parte Application for an extension of time in which to elect to intervene. Originally filed on 7/10/06. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 20 | Sealed Document. Order granting extension of time. Extended to 8/8/06. Originally filed on 7/12/06. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 21 | Sealed Document. Relator's Motion to extend seal for 60 days. Originally filed on 8/16/06. (kch1) Additional attachment(s) added on 10/18/2006 (kch1, ). (Entered: 10/18/2006) |
| 10/17/2006 | 22 | NOTICE of Election to Decline Intervention by Plaintiff United States of America. Originally filed on 8/15/06. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 23 | Order to Unseal Case. Signed by Judge Edmund A Sargus on 8/15/06. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 24 | Civil Cover Sheet. (kch1) (Entered: 10/18/2006) |
| 10/17/2006 | 25 | COMPLAINT filed by Plaintiffs Thomas McDermott, United States of America, Philip Borris, Michael Eversole, and Rodney Gossett against Defendants Bechtel-Jacobs Company LLC, Safety Ecology Corporation, and McDonald Consulting Corporation.(kch1) (Entered: 10/18/2006) |
| 10/18/2006 | | Judge Edmund A Sargus added. Judge Michael H. Watson no longer assigned to case. (tto, ) (Entered: 10/18/2006) |